I. T. S. RUBBER CO. v. PANTHER RUBBER MFG. CO.

(District Court, D. Massachusetts. May 20, 1918.)

No. 740.

PATENTS ⊙�net328—VALIDITY—INFRINGEMENT.

The Tufford patent, No. 1,177,833, for a mold for making rubber heels, claim 11 of which specified a mold chamber having one wall convex and the other concave, *held* invalid, and further *held* not infringed, if deemed limited to the particular structure shown and described in the patent.

In Equity. Suit by the I. T. S. Rubber Company against the Panther Rubber Manufacturing Company. On hearing on pleadings and proof. Bill dismissed.

Nathan Heard and Frederick A. Tennant, both of Boston, Mass., F. O. Richey, of Elyria, Ohio, Maurice M. Moore, of Boston, Mass., and Charles A. Brown, of Chicago, Ill., for plaintiff.

Horace Van Everen and Van Everen, Fish & Hildreth, all of Boston, Mass., for defendant.

DODGE, Circuit Judge. The plaintiff in this bill, filed July 20, 1916, owns United States patent No. 1,177,833, issued April 4, 1916, to John G. Tufford, assignor to the plaintiff company, for mold for making rubber heels. As the case was presented at the hearing, the plaintiff contended that only one of the twelve claims of the patent had been infringed by the defendant, viz. claim 11, which is as follows:

"11. A mold for forming heel lifts, including assembled parts, one of which is provided with a molding chamber having the general outlines of a heel lift, one wall of the molding chamber being concave, and the opposed wall of said chamber having a convex surface coacting with said concave wall, one of said walls being provided with washer supporting devices."

September 18, 1916, in compliance with an order of court, the plaintiff specified, as the structure which it would "contend at the hearing constitutes an infringement," the mold structure illustrated in certain annexed drawings, marked "Plaintiff's Exhibit 1, Sheets 1 and 2."

December 4, 1916, in answer to interrogatories filed by the plaintiff, the defendant produced a three-part rubber heel mold, marked for identification "Defendant's Mold," and admitted that said mold, or others identical therewith, were used by it since April 4, 1916, and prior to the filing of the bill.

Assuming the validity of the above-quoted claim in suit, according to its broad terms, there seems to me no doubt that molds like the one marked "Defendant's Mold" which are, for all essential purposes, such molds as the above drawings marked "Plaintiff's Exhibit 1" show are within the terms of the claim, so that their use by the defendant would have to be regarded as an infringing use.

A question of more difficulty, however, arises as to the validity of the claim in issue, which is denied by the defendant.

In the plaintiff's patent a mold said to embody the patented invention is described, with references to drawings which show both a "mold unit" and an "assembled multiple or gang mold." The mold so shown and described has certain features to which no reference is made in the above claim in suit, although they appear as elements of other claims of the patent not here in suit. The mold shown and described is a three-part mold, consisting of a base plate, an intermediate plate, and a top plate. Claim 11 purports to cover any mold for forming heel lifts, without regard to the number of parts composing it, in one part whereof there is a molding chamber having the general outline of a heel lift, one wall of which chamber is concave, the opposed wall convex and coacting with the concave wall, and one of the two walls provided with washer supporting devices.

The first inquiry is as to the substantial difference between a mold having the above-claimed features and heel lift molds previously known and used.

Heel lift molds for forming rubber heels, whose molding chamber had the general outline of a heel lift, were and long had been familiar. In most of them, one or both the opposed walls of the molding chamber were flat. In some, one of the walls, being that intended to form the top of the heel lift, had a projection or convexity, while the opposed wall, intended to form the bottom of the heel lift, was flat. From such molds, molds satisfying the requirements of the claim in suit differ only in having the opposed wall of the molding chamber and intended to form the bottom of the heel lift concave, instead of flat, and thus coact, if so shaped, with the convexity opposed to it. As to the washer-supporting devices wherewith one wall of the chamber is to be provided, according to the claim in suit, they were familiar in the prior molds referred to and can be regarded as a novelty, if at all, only in combination with the other features of the claim.

In molds for forming articles of molded rubber other than heel lifts, the idea of having one wall of the molding chamber convex, so as to coact with a concave opposing wall, was old; as is shown by Defendant's Exhibits I, K, M, and O, and by the evidence relating to those exhibits. There would be difficulty, in any event, in discovering anything amounting to invention in merely making one wall of a heel lift molding chamber, having a convex wall opposed to it, concave instead of flat, as in the prior heel lift molds above referred to; but whether or not to do this could be regarded as patentably new, if Tufford had been the first to do it, need not be determined, because the evidence satisfies me that it had been done long before the patent in suit issued, in molds like "Defendant's Exhibit Nerger Mold," made and used by Morgan & Wright Company, at their factory in Chicago, between 1897 and 1902.

The evidence regarding such molds and their prior use was taken under an order made herein on July 24, 1917, upon a motion by the defendant to reopen the case for the introduction of newly discovered evidence, filed July 3, 1917, after completion of the original hearing on June 14, 1917. By stipulation between the parties, the

evidence consists of the defendant's affidavits in support of said motion, the plaintiff's answering affidavits, and defendant's reply affidavits. The Nerger mold, produced as an exhibit, answers, so far as I can see, each and every requirement of the plaintiff's claim 11 here in suit. It is a single cavity mold, or mold unit. With it, or molds like it, were made over 2,000 heels, upon Nerger's order, of merchantable quality so far as appears. There was no concealment regarding their manufacture, and it was known to Nerger himself and to a number of employés of the Morgan & Wright Company, who have testified about it. Specimens of them are exhibits in the case. The heels produced were made under United States patent to Nerger, No. 661,129, issued November 6, 1900, for an improvement in rubber heel lifts. There is evidence that the mold produced many imperfect heels, and that the cost of the heels produced was too great for profit. But this was partly because of the fact that it is more economical to use multiple molds than single unit molds—a fact which seems to me immaterial upon the question here involved, because there can be no invention in combining single into multiple molds. I see no reason to doubt that the Nerger mold, properly adjusted and handled, is entirely capable of producing satisfactory heels. In 1916 Nerger sold his patent to the plaintiff in this case, together with six of the molds which had been used by Morgan & Wright in the manufacture above described. Although Nerger does not appear to have further continued the use of his mold in making heels, I am unable to hold that, as the plaintiff contends, it was merely an unsuccessful and abandoned experiment. Upon the evidence regarding it, I must regard his mold as an anticipation of the structure covered by the plaintiff's claim in suit sufficient to prevent any conclusion that the claim covers anything involving invention or patentably new. The mold described in the patent has various features to which the claim in suit makes no reference, as further stated below; but these, as will also appear, are not found in the defendant's mold.

The plaintiff's evidence sufficiently shows that concavo-convex heel lifts, such as may be made by using the mold described in the patent in the manner therein set forth, have had great commercial success and possess qualities rendering them superior to heel lifts not shaped as the patented mold shapes them, and made according to the method which the patent describes.

But, although the plaintiff is understood to have a patent purporting to cover such heel lifts, it is not complaining in this suit of any infringement of that patent. Nor is the patent upon which it sues in this case a patent for a method or process. It is a patent for a mold only, and for the purposes of this case, for a mold having only the features specified in claim 11.

The patent, it is true, contains a full description of a method or process which includes use of the patented mold. It contains also a full statement and explanation of the advantages claimed to reside in such heel lifts as are so produced. But all this cannot make it a patent for anything beyond the mold described, nor import into the broad

terms of the particular claim in suit anything not fairly expressed by those terms in connection with the description given of the patented mold.

The patentee begins his specification by saying that his improvement in molds relates to the manufacture of resilient heels, and has special reference (1) "to the method of acting upon the plastic rubber or composition to produce a heel," and (2) "as the mold employed in practicing the method." But, as has been stated, neither the patent nor the claim in suit cover a method, although a method is thus put forward as the most important feature of the invention.

The specification goes on to declare that the object of the invention is to produce a resilient heel which will have its attaching face concave throughout its area, so that a vacuum or suction cup may be formed whereby it will be held to the shoe temporarily until the nails can be applied, and that a further object is to produce a heel which will have a flat tread surface when applied to a shoe, and which may be equipped with fastening devices so located that it can be easily trimmed down. But, as has been stated, the patent cannot be treated as for a product, either of the unpatented method set forth at length in the specification, or of the patented mold.

After describing the mold, which, and not the heel to be produced by means of it, must be regarded as the only improvement in manufacture which the patent can cover, the specification proceeds to describe "the practice of the invention." The invention being for present purposes a mold, and nothing more, this description of a method wherein the mold is used is significant only so far as it tends to describe the alleged new mold by describing its operation in use.

According to said description, rubber or composition is to be placed in the chamber of the mold so as to completely fill its opening. This is the chamber having, according to claim 11, the general outline of a heel lift and one concave wall. A top plate forming the opposed wall of the chamber, and having a convex surface coacting with the concave wall, is then to be put in position, with its convex projection entering a depression which surrounds the molding chamber. To this depression claim 11 makes no reference, nor is there any such depression to be found in the defendant's mold.

The specification provides that the recess or cavity forming the concave wall of the molding chamber is to be "a true section of a sphere," and also that the convex surface of the projection on the under side of the top plate, which is to form the opposed wall, is also to be "a true section of a sphere and an exact complement of" the concave wall of said chamber wherewith it is to coact. It further provides that said convex surface is to be "adapted to fit in the concave depression" surrounding the molding chamber and referred to in the preceding paragraph hereof. Nothing of all this is to be found either in the claim in suit, or in the defendant's mold. From that mold, not only is any depression surrounding the molding chamber absent, but neither the convex nor concave wall thereof can be properly described as a true section of a sphere.

The description requires the plates composing the mold to be steam heated, and, when the mold is filled, subjected to hydraulic pressure, so as to compress and solidify the plastic contents of the mold. It may be taken for granted that any mold for making rubber heels would be treated, when in use, substantially in the same way. There is a statement that surplus material overflowing in the process is to be accommodated in an annular cavity surrounding the above depression which surrounds the molding chamber, therein forming a "fin" to be trimmed off before marketing the product. No such annular cavity is referred to in claim 11 or found in the defendant's alleged infringing mold. According to further statements in the specification, by means of ribs upon the top plate of the mold, about which claim 11 is silent, and which are also absent from the defendant's mold, grooves in the upper face of the heel will be produced, which will "mark off separate suction areas at the center of the heel." And finally, the pins—i. e., the "washer supporting devices"—of claim 11, are to "converge on radii of the arcs described by the concavity from which they rise, and thus form openings in the heel converging toward the concave or attaching face thereof, brought into parallel relation when the heel lift is flattened against the shoe, so that nails driven through them will enter the shoe heel perpendicularly. No suggestion as to any of this is to be gathered from claim 11, nor are there any pins or washer supporting devices so arranged in the defendant's mold.

According to the plaintiff's own evidence, the mode of operation it follows, in practice, when its patented mold is used, differs in important respects from the mode of operation described in the patent. Instead of beginning by placing rubber or composition in the molding chamber, so as to completely fill its opening, what is first done is to place a disc-like heel blank, containing a desired weight of rubber or composition, on the pins in the cavity of the chamber, upon which the convex upper member is then forced down by hydraulic pressure, whereby it is said that air is pocketed or trapped between the lower surface of the disc-like blank and the concave bottom of the chamber, the resistance of air so confined thereupon operating, as is claimed, to force the outer edges of the disc-like blank to the outer edges of the mold. It is further said that all this results in securing more density and less porosity in the edges of the heel produced. An intermittent sudden pressure upon the upper member of the mold is said to be employed in order to expel the air confined as above.

The evidence relied on by the plaintiff to show that any such effect upon the product is in fact produced seems to me by no means convincing. But, taking the facts to be as stated, it is clear that the plaintiff is using its patented mold to carry out a method other than that directed by the patent to be followed in "the practice of the invention" or in producing heels "by my improved method." Nothing is said in the patent about using the stock in disc-like blanks, and such blanks can hardly be supposed to "completely fill the opening" of the cavity in the mold, according to the directions of the patent. Nor is anything found in the patent about trapping or pocketing air underneath what is put into the cavity, nor any suggestion that any result of importance to the

product may be secured thereby. Though a patentee is entitled to all the advantages of the invention he describes, he cannot claim the benefit of any others; and here, so far as he has undertaken to describe his invention by describing a method, he has relied only on the method described in the patent.

The defendant, if it could in any case be said to follow the method of the patent while it uses a mold constructed in so many particulars differently from the mold shown and described in the patent, does not, according to its evidence, follow the plaintiff's method as described in the plaintiff's evidence. Instead of disc-like blanks, it uses blanks in size and shape substantially like the finished heel, and leaving little scope for the production of any effect upon the outer edges thereof, such as the plaintiff claims to secure.

To the differences in construction between the mold described in the patent and the defendant's mold it may well be that some part of the success of the plaintiff's product may be due. There is at any rate nothing to show that said success is due only to those features of the patented mold which it has claimed in claim 11. The attempt appears to have been made to cover by that claim all concave-convex molds, whether in other respects such as described in the patent or not. The result has been, in my opinion, to make the claim one for what the patentee did not invent and was not patentable. If the claim could be regarded as valid, if limited to the particular structure shown and described in the patent, so as to cover only molds having the described features of the patented molds, the defendant's mold, from which so many of those features are absent as above, does not infringe it.

These conclusions require dismissal of the bill, and there may be a decree accordingly. The defendant may submit a draft decree, under rule 23 of this court, on or before May 27, and the plaintiff may file corrections thereof on or before June 2, 1918.