FETZER & SPIES LEATHER CO. v. I. T. S. RUBBER CO.

(Circuit Court of Appeals, Sixth Circuit.   October 7, 1919.)

No. 3268.

PATENTS ☞328—PATENT FOR RUBBER SHOE HEELS VALID AND INFRINGED.

The invention of the Tufford reissue patent, No. 14,049, for a rubber shoe heel, *held* sufficiently disclosed by the original specification, the application for reissue *held* timely, and the patent not anticipated and valid; also infringed.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit in equity by the I. T. S. Rubber Company against the Fetzer & Spies Leather Company. Decree for complainant, and defendant appeals. Affirmed.

Burton W. Cary and Horace Van Everen, both of Boston, Mass., for appellant.

F. O. Richey, of Elyria, Ohio, and Charles A. Brown, of Chicago, Ill., for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

PER CURIAM. We approve and adopt the opinion of the District Judge, save in the particulars to be inferred from what we later say;

but certain points have been pressed upon us by appellant with such force as to call for a summary statement of our conclusions.

1. Nerger discloses a form which we think essentially closer to Tufford than any other earlier patent shows. The substantial difference between Nerger and Tufford is that the lift of the former was scoop-shaped and that of the latter saucer-shaped. These are untechnical and not very accurate terms of description, but they serve to distinguish as well as any two words may. They may be made clearer by assuming that all the descriptive words are used with reference to the horizontally placed plane of the bottom of the permanent heel to which the lift is to be attached. It is characteristic of the saucer-shape that there should be a somewhat centrally disposed low spot, so that if the upper edges of the lift were put in contact with the horizontal bottom of the heel, as far as may be without using force to distort the normal shape of the lift, any contained liquid would be retained in this lowest spot, because the edge of the lift towards the breast of the heel would be higher. It is characteristic of the scoop shape, under the same conditions, that the line from the low spot to the edge of the lift at the breast would be substantially horizontal, and the liquid would run out. The effect of this distinction is that, when the central part of the depression is forced up against the bottom of the heel, there is a distinctly greater tendency with the saucer shape than with the scoop shape for the breast edges of the lift to maintain tight contact with the heel. If the surfaces are smooth enough, this excludes the air, the atmospheric pressure holds the lift, flattened out, against the heel, and we have the result called "suction."

We do not regard this suction as of decisive importance in itself, because after one or two leather lifts had been removed, the roughness of the leather and the overlapping by the rubber would make it doubtful whether the suction adherence would be of much practical use; but the suction test is of distinct value as determining whether the rubber lift has or has not that quality which distinguished Tufford from Nerger. The distinction between the two is fairly well expressed by the statement that Nerger is of concavo-convex form upon lateral cross-sections, while Tufford is of this concavo-convex form also upon longitudinal cross-sections. This advance made by Tufford over Nerger seems very small—in looking forward, it might have been thought unsubstantial; but the actual events seem to demonstrate that it was very important, and we have no doubt that it should be considered to involve invention. This conclusion is in accord with that of the Circuit Court of Appeals of the First Circuit in I. T. S. Co. v. Panther Co. (May 26, 1919) 260 Fed. 934, —— C. C. A. ——.

The best that can be said of Nerger's patent disclosure is that it is not inconsistent with a lift concavo-convex in longitudinal cross-section also, and that his lift therefore might or might not have had that form. This uncertainty was removed by the evidence as to what Nerger did. The lifts which he made and sold were scoop-shaped, and his business was not successful. We prefer to rest the elimination of Nerger upon the difference between his form and Tufford's rather than upon the ground of abandoned experiment.

2. The original specification sufficiently discloses the ideas to which the added claims of the reissue are directed, as these claims are interpreted in our opinion in United States Rubber Co. v. I. T. S. Co., 260 Fed. 947, —— C. C. A. ——, filed herewith. The drawing is rather blind, but the specification contains descriptive matter which appropriately applies to these features. If there were doubt about it, it would be solved by the proof that Tufford, from the beginning, never made any form of lift, excepting that form which contains these particular features, and samples of this form were the basis of the proceedings in the Patent Office. Hence it is clear that any such doubt will not defeat the reissue.

3. Plaintiff does not appeal from the award of only nominal damages, and the decree will be affirmed; but the affirmance will be without prejudice to further considering in the court below whether any of the defendant's forms escape infringement of claim 10, for the reason given in the U. S. Rubber Co. Case.

The opinion below of Westenhaver, District Judge, is as follows:

The bill in this case charges infringement by defendant of United States reissue letters patent No. 14,049, issued January 11, 1916, to complainant, as assignee of John G. Tufford. The defenses are: (1) That this reissue patent is void, because not for the invention covered by the original patent, and because the application therefor was unduly delayed without sufficient excuse; (2) that it is invalid for lack of invention and lack of novelty; and (3) that defendant's construction does not infringe.

Tufford's invention relates to rubber shoe heels. Technically and in the shoe trade it is called an elastic or resilient heel lift. A lift in the shoe trade is one layer of the leather making up the finished heel, and, as ordinarily applied, a rubber heel lift is approximately the depth of two layers of leather. The upper part or face of the lift is the attaching face. The forward edge is called the breast.

The rubber heel lift in common use, and the only one commercially known or sold prior to Tufford's, was of the flat type. Many disadvantages are said to exist in this type of heel lift. When attached, it has a pronounced tendency to separate at its edges from the leather heel, and also to spread and expand beyond the leather heel. This not only is unsightly in appearance, but produces a gap and offset between the rubber and leather into which dirt and water will enter. The heel becomes uneven, and its connection with the shoe heel proper is weakened. This is said to be due to several causes. One is that, if the nails be driven inwardly from the edge, so as to avoid the rows of nails in the leather, the compression in the center part of the rubber heel lift has a tendency to cause the lift at its outer edges to draw away from the leather. Furthermore, it is said, while cements are made which will firmly unite rubber to rubber and leather to leather, no cement is made which will firmly unite rubber to leather; when cement is necessary, and is used in attaching the flat type of heel lift, it is found that the action of wear and water destroys the cement and produces the objectionable gap between the rubber and leather above noted. Attaching the flat heel, in doing which cement is necessary, is also a relatively slow operation as compared with the attaching of heel lift of the Tufford type. Attaching a lift with cement requires a careful preparation of the attaching face of the heel lift and of the surface of the leather heel proper, and an interval of some 15 to 20 minutes between the application of the cement and the time when it has dried sufficiently to be attached must be allowed in the operation.

Tufford's rubber heel lift was invented by him to overcome these difficulties. Its most important features as claimed by him are its peculiar and original shape and the suction thereby obtained when it is attached. In form it is uniformly curved on all cross-sections thereof. The upper

face is concave, so that the entire heel lift lies below a plane passing through the rear upper edge and breast corners. It is of uniform thickness, and its lower or convex face lies parallel to the upper or concave face. A construction in this form of resilient or elastic rubber will, when compressed against a flat surface, adhere thereto. The air in the cavity between the concave face and the flat surface is thus excluded, and the air pressure called "suction" retains it permanently in place. The natural tendency of the heel lift thus constructed to assume its natural curved position is said to be likewise present, and, as a result of these forces, this heel lift adheres closely at the edges at all times to the leather heel proper, keeps its shape, and has unusual wearing qualities.

The specifications show other features or elements of the invention which it is not necessary to describe in detail, because the controversy here revolves around the features or elements above described. These additional features, it may, however, be noted, apply to the position of the nails distributed about the center of the heel lift and at a substantial distance from the edges, the shape and location of the washers imbedded in the heel lift in which the nails are to be driven, the diminutive size of the nail holes, which are sufficient only to act as guides for the nails, and so small as to prevent the escape of any appreciable amount of air to or from the suction area of the heel lift. In addition, shallow channels are cut or molded in the concave face in the form of a shield with a cross therein, which are said to create four additional separate and distinct suction areas co-operating with the suction area of the entire upper face.

On this hearing Tufford demonstrated the manner in which he made this invention. In 1913, and for many years prior thereto, he was a cobbler in a shoe store in Elyria, Ohio. In following his trade he came to know all the different forms of rubber heel lifts, and observed the respects in which, as he says, all were more or less unsatisfactory. He conceived the idea that, if a heel lift were made having the suction features claimed for his invention, it would be an improvement over all existing types of heel. In developing this conception he provided himself with the round or globular type of a newel post, and over this top he nailed a flat disc of rubber. In the exact top of the section of a sphere thus created, he outlined first a heel lift of the desired size, and then cut and filed away the rubber within these outlines to a perfectly flat surface. He next cut out the heel lift, which, when free, immediately assumed the concave shape of his patented invention, uniformly curved on each cross-section thereof. The other side was then cut, filed, and trimmed to a uniform thickness. The finished heel lift retained its shape, and, when applied to a flat surface, adhered thereto in the manner above described. This he applied to a pair of his own shoes, which he wore continuously, and which he says gave entire satisfaction, and demonstrated all the advantages now claimed for his invention. He made two other pairs by hand, which he applied to shoes worn by two different clerks employed in the same store with him. They also were found to be satisfactory. Later, and after he had completed his device by developing the form and location of the washers and nail holes and the channels or grooves in the form of a shield with a cross therein, as above described, he applied for a patent. His application is dated July 21, 1913, and was issued September 15, 1914.

Some time during the year 1914 Tufford presented samples of his heel to Mr. Richard Griffith, superintendent of the Miller Rubber Company of Akron, Ohio, in order to induce this company to make molds and engage in the manufacture of these heel lifts. Mr. Griffith refused, because the shape of the heel lift presented, he thought, unusual difficulties in constructing a mold, and he was not willing that the company he represented should itself undertake the task of making molds and guaranteeing a satisfactory product. He directed Mr. Tufford to invent a mold himself. Later Mr. Tufford returned with a single cavity mold of the desired shape and form, and thereupon the Miller Rubber Company had similar molds made, manufactured a number of sample heel lifts, and determined for itself that the heel lift could be made commercially in conformity to the sample presented.

The first heels for commercial use were manufactured for complainant by the Miller Rubber Company early in 1915. Complainant's first sales were

made in March of that year. The commercial success of this heel lift has been phenomenal. The prices agreed upon between complainant and the Miller Rubber Company at the beginning of their business relations have continued to the time of the trial and are still in force. The prices at which the heel lifts were first sold to the trade in February, 1915, have not been changed and are still in force. Complainant has not resorted to any method of advertising, except to furnish some cards to shoe dealers and to submit occasional exhibits at shoe-finding conventions. In the early months of 1914 Mr. Tufford himself, and perhaps others, made some trips to Cleveland and elsewhere to call the lift to the attention of shoe dealers and jobbers; but, except to that extent, no force of traveling or soliciting salesmen has been employed.

The sales of the Tufford lift in February, 1915, were 6,696 pairs, and for the entire year 748,189 pairs. The sales for the year 1916 were 4,529,518 pairs; for 1917 they were 12,733,567 pairs; and for the first six months of the year 1918, 13,893,245 pairs. For the month of June alone, 1918, the number sold were 2,279,045 pairs. Complainant has put in capital from first to last of less than $30,000. Its undivided profits January 1, 1918, were $800,000. Its net earnings alone for the year 1917 were $482,000. The Miller Rubber Company began with 10 or 15 persons in its press room in February, 1915, making these heel lifts; it now has 160 employés so engaged. Its investment for this purpose totals a half million dollars. It was making at the time of trial 75,000 pairs a day, and trying to reach an output of 120,000 pairs a day. Mr. Griffith says the company has never been able to keep up with the public demand for this heel lift.

Numerous witnesses support Tufford's contention that his invention has accomplished the results claimed for it. Its edges do adhere closely to the contacting leather of the heel proper. Its edges do not spread beyond the heel proper; the tendency of the edges of the flat rubber heel lift to gap from the leather is overcome, either by suction or by the tendency of the lift to crowd or compress towards the center. It may be applied quickly and easily and without the use of cement. It has unusual wearing qualities as compared with other forms of rubber heel lifts, and keeps its shape and form until it is worn down. The evidence also shows that its phenomenal sale is not due to advertising or business methods, but is exclusively due to its inherent excellence. The evidence also shows that the well-known O'Sullivan flat rubber heel has been extensively advertised in magazines and by street car placards, but that, during the period the sales of the Tufford heel have been growing so enormously, it has merely maintained a standard volume of sales.

Invention is presumed from the issue of the letters patent, and defendant does not, as I understand, contend that this patent would, standing alone in the art, be void for lack of invention, but does contend that, in view of the prior art it is not a sufficient advance to be patentable, and has been anticipated by that prior art. Defendant relies on United States letters patent No. 638,228, issued December 5, 1889, to Cara S. Ferguson, and United States letters patent No. 661,129, issued November 6, 1900 to Frederick Nerger. A brief examination of each of these patents needs to be made.

The prior art embodied in these two patents was taken into consideration by Tufford in constructing his original device. In the specifications of his patent he says that he is aware that a cushion lift having a concave upper surface to be applied to the lower face of the shoe heel proper has been proposed, but that he does not believe that any practical or satisfactory means has up to the time of his invention been discovered and employed for attaching the same. One of the methods he says has been to imbed circular washers in the lift and use nails or other securing elements driven through these washers into the shoe heel. These circular washers he says have been so arranged that after a short use the edges thereof will be exposed at the tread surface of the heel lift. This is an element of the Ferguson patent. His specifications and drawings disclose a circular washer of substantially the same outline as the heel lift with the center of it cut away.

Another method employed, Tufford says in his specifications, has been to imbed in the heel lift a metal plate conforming in contour to the cavity of the heel lift, and then secure the heel lift in place by driving nails or screws

through these plates and into the leather heel proper. In this form of construction he says that when pressure is placed on the heel it will tend to flatten out the plate, thereby causing its edges to cut through the lift, besides weakening and loosening the nails or screws. This is an element of the Nerger invention.

An examination of the drawings and specifications of the Ferguson patent shows a rubber heel lift substantially scoop-shaped in form. It is difficult to say, from an examination of the drawings and specifications, whether or not the upper face is concave on every cross-section thereof, or that it lies entirely below a plane passing through the rear edge and breast corners. Certainly it is not the shape and form of the Tufford heel. It is not uniformly curved on every cross-section, and the samples constructed of that form without the metal washer, introduced and demonstrated at this hearing, do not have the quality of adhesion or suction present at all times in the Tufford heel lift. Ferguson, it is true, anticipated in some degree Tufford's conception that a concavo-convex heel lift will cling closely to the leather of the heel, due to its natural tendency to assume its normal curved form. He depended, however, upon two important elements not present in Tufford's heel lift to accomplish this result. One of these is a raised marginal portion continuous about the margin or outline of the heel section on its concave side. Another is a metallic spring frame or washer, having the substantial outline of the heel section, with the center cut away, and which is curved or bent to correspond to the curvature of the heel lift. It was on these two elements that Ferguson relied to overcome the usual tendency of flat rubber heel lifts to draw away from the leather, creating a gap at the meeting edges. These features are both omitted from Tufford's heel lift, and are themselves wholly adequate to distinguish the two inventions.

The Ferguson patent has been considered by this court. The Panther Rubber Company, as assignee of the Ferguson patent, sued herein the I. T. S. Rubber Company, charging that the Tufford heel lift infringed the Ferguson patent. On hearing July 8, 1916, Judge (now Mr. Justice) Clarke held that it did not infringe. On appeal to the Circuit Court of Appeals this holding was affirmed in an opinion filed March 15, 1918. In a per curiam opinion that court says that the raised marginal portion in Ferguson's specifications is an important and controlling element of his invention; that not only are the two constructions very dissimilar in appearance, but that it is not conceivable that the depression in the form of a shield with a cross therein in the concave center of the lift can perform the same functions claimed for the depression within the raised marginal portion of Ferguson's heel; and that, notwithstanding it is insisted that Ferguson was original in bringing in the element of a concavo-convex lift, his patent has no claim for that feature, except in combination with the element of a raised marginal portion. This is true of the first claim, and of the second claim the element of the concavo-convex form is claimed only in combination with a correspondingly concaved spring metallic frame embedded within said heel section. Furthermore, on this hearing it appeared that the Ferguson heel had never been manufactured and sold commercially in the concavo-convex form of his patent, but that the commercial article was a flat heel with the embedded metallic frame, and with an abrupt depression in the center of the upper face; in other words, the patented construction has not been accepted by the public as a solution of the rubber heel lift problem.

Defendant's main reliance herein is on the Nerger patent. It is difficult to resist the impression that this reliance is not because Nerger more nearly anticipates than Ferguson, for the contrary is undoubtedly true, but is because of the decision of the Circuit Court of Appeals above noted. Nerger's heel lift is described as being of concavo-convex form, but not as being concavo-convex on every cross-section thereof. The upper face does not lie, however, below a plane passing through the rear upper edge and the breast corners. All the edges are substantially straight and the deepest part of the concavity is not in the center of the lift, but on the line of its breast. Heels of this form and shape were made and sold in small quantities at retail in Chicago in the years 1901 to 1902, and samples have been produced and demonstrated before me. It is manifestly impossible that this heel could have the suction or ad-

hering qualities of the Tufford heel, nor did the inventor attempt to obtain these qualities by the power of suction or adhesion. Nerger relied primarily on a spring metallic frame of the same curvature of the heel lift imbedded therein to perform this function and to obtain a close-fitting heel lift which would not in use gap away from the leather heel proper. This metallic frame has lateral arms extending outwardly towards the edges, and this frame, it is observed, in use has a tendency to weaken and destroy the heel and to obtrude through the wearing surface of the heel lift.

I have examined the testimony in deposition form showing previous sale and use of the Nerger heel. Nerger ordered from Morgan & Wright, rubber manufacturers of Chicago, during the years 1901 and 1902, some 600 pairs of heels. These were peddled by him or one or another of his sons to shoe cobblers in and about Chicago. Nerger, his sons, and one or two other witnesses also testify that these heels gave satisfaction, adhered closely at the edges, did not gap away from the leather, and did not spread beyond the leather and wore well. Giving full weight to these statements, but taking this testimony as a whole, I am convinced that the Nerger heel lift was neither successful nor practicable, that a limited number only were sold, and that, owing to the inherent defects therein, it failed to meet or solve the problem of a desirable heel lift. Nerger brought this heel lift to the attention of different persons in his efforts to enlist their co-operation in making and selling them, but always without success. His invention must be regarded as a practical failure.

Moreover, even if the Ferguson or Nerger heel lifts had, in practice, accomplished the same results as the Tufford heel lift, the latter is, in my opinion, still such an advance over the prior art therein disclosed as would amount to patentable invention. The metallic circular washer of the Ferguson and the metallic spring frame with lateral arms of the Nerger heel are obvious disadvantages, and the evidence shows that no rubber heel lift embodying these features is or could be successful in practice. They destroy in large part the resiliency of the heel, which is the main purpose of all rubber heel lifts. They shorten the life of the heel lift, and increase the rapidity with which it wears out. They enhance substantially the cost of manufacture, for a heel lift carrying a metallic plate cannot be molded at a single operation from one piece of rubber, but must be molded in two sections, with two operations.

I am of opinion that complainant's patent embodies invention and was not anticipated. The presumption of patentable invention flowing from the allowance of the application and the granting of a patent by the Patent Office authorities is strengthened to an unusual degree by the actual proceedings in this case. During the pendency of the reissue application Ferguson and Nerger were both cited against it. The examiner repeatedly rejected the application, first because of Ferguson and Nerger patents, and later on Nerger's alone, and it was not until after he had seen, inspected, and demonstrated the Nerger and Tufford heels that he passed the application. The applicant did not modify or limit his claims as a result of these repeated rejections and finally the examiner, upon further consideration, admitted his error and the patent was issued. In these circumstances, the granting of the patent carries more than the usual weight.

Furthermore, the distinctive change in shape, form, and proportion in the Tufford heel lift over both the Ferguson and Nerger form is so great as in my opinion to amount to invention. In these respects it falls within the class of cases of which the following are types: Faultless Rubber Co. v. Star Rubber Co. (C. C. A. 6) 202 Fed. 927, 121 C. C. A. 285; Diamond Rubber Co. v. Consolidated Rubber Co. (Grant rubber tire patent) 220 U. S. 428, 31 Sup. Ct. 444, 55 L. Ed. 527. In addition, the acceptance by the public and the phenomenal commercial success of the Tufford heel lift would, if the question of invention were otherwise doubtful, carry great, if not controlling, weight.

Defendant's contention that the reissue patent is invalid, because not for the same invention as was disclosed in the original, and because of undue delay in applying therefor, remains to be considered. Tufford's original application was filed July 21, 1913, and the patent thereon was issued September 15, 1914. The application for the reissue was filed June 22, 1915, and the patent was granted January 11, 1916; a period, it thus appears, of only nine months in-

tervened from the granting of the original to the application for the reissue patent. The evidence also shows that this rubber heel lift, as now manufactured and sold, is precisely the same heel lift as was originally designed and invented by Tufford, and that no changes have been made in its shape, form, or proportion since the first samples were made up by the Miller Rubber Company and sold to the public. The date of these first sales was February, 1915. In the interval between that date and the filing of the reissue application no patents were applied for or taken out by any other person embodying any of these features of the Tufford invention, nor did any person in this interval manufacture or sell any heel lift of like shape, form or proportion. Defendant's contention that there was undue delay in applying for the reissue, or that the reissue patent is void by reason thereof, cannot be sustained.

Defendant's contention that the reissue patent is for a new invention, not embodied in the original patent, is not sound. The original patent, it is true contained only four claims, and these are the first four of the reissue patent. The latter contains six additional claims, being 5 to 10, both inclusive. In the four original claims of the original patent the main features of the invention herein considered were not claimed; they are claimed in the new claims of the reissue patent. Tufford's original invention, however, not only included these features, but all of them were set out with reasonable clearness in his original specifications. The changes made in Figure 2 of the drawings of the reissue patent are slight and immaterial, and scarcely perceptible to the untrained eye. The additions made to the specifications are from lines 83 to 105, inclusive, on the second page. An examination of these added lines and a comparison thereof with the original does not show the introduction of any new idea not disclosed in substance in the original. These lines were added only to bring the same out with greater clearness.

Criticism is also made of the statement in these added lines that uniform pressure is exerted on the heel of a shoe when the lift is placed on the heel and the convex face thereof depressed to flatten the heel lift. This is said to be untrue, and, because untrue, the patent is invalid. That the pressure at the breast corners and at the rear edge of the heel is greater than at the other portions of the edges is probably true. Mechanically it is probably necessary that the heel lift should be circular in shape to get an absolutely uniform pressure. The heel lift, however, when applied as directed to a flat surface, does create the impression of producing uniform pressure. The statement of the application is approximately correct, and its departure from the exact truth is, it seems to me, without any material importance.

My conclusion is that claims 5 to 10 are not for a new invention, not disclosed in the original application. All the conditions justifying a reissue patent are here present, and none of the grounds upon which such patents have been held void have been here shown to exist. Adequate authority for this conclusion is found in American Automotoneer Co. v. Porter (C. C. A. 6) 232 Fed. 456, 146 C. C. A. 450.

Coming to the question of infringement, the rubber heel lift sold by the defendant was manufactured by the Foster Rubber Company and known as the "cat's paw" heel lift. Defendant is a shoe dealer in the city of Cleveland, Ohio. Immediately upon receipt of notice from complainant of the alleged infringement, it ceased to make sales, and later returned to the Foster Rubber Company such stock as it had on hand. Defendant did not, however, enter a disclaimer as to the charge of infringement, nor give any assurance of an intention to refrain therefrom in the future. On the other hand, the defense in this action was undertaken by the Foster Rubber Company, and the validity of complainant's patent put in issue and complainant put upon full proof thereof. The infringing heel lift is of a small size, corresponding to complainant's size "k," and is used on ladies' shoes and boots. It is an exact duplicate of complainant's heel of the same size. It is uniformly curved on every cross-section thereof. Its upper or concave face lies in a plane below the rear edge of the heel and the breast corners. It is of uniform thickness, and has the same qualities as complainant's heel lift of the same size. In my opinion infringement is fully shown.

A decree will be entered, sustaining the validity of claims 5 to 10, inclusive, of the patent, and awarding an injunction, but in view of the small sales

and necessarily insignificant profits made by defendant from the infringement, an order of accounting is not justified and will not be had. In lieu of an accounting, nominal damages of $1 are awarded, and may be included in the decree.