## UNITED STATES RUBBER CO. v. I. T. S. RUBBER CO.

(Circuit Court of Appeals, Sixth Circuit.    October 7, 1919.)

### No. 3296.

PATENTS ☞328—PATENT FOR RUBBER SHOE HEELS INFRINGED.
   The Tufford reissue patent, No. 14,049, for a rubber shoe heel, as to the new claims incorporated in the reissue, *held* infringed on the showing made for a preliminary injunction, with the exception of claim 10.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit in equity by the I. T. S. Rubber Company against the United States Rubber Company. From an order granting a preliminary injunction, defendant appeals. Affirmed.

Charles S. Jones and Livingston Gifford, both of New York City, for appellant.

Charles A. Brown, of Chicago, Ill., and F. O. Richey, of Elyria, Ohio, for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

PER CURIAM. This is an appeal from a preliminary injunction upon the same patent involved in the case decided herewith. Fetzer & Spies Co. v. I. T. S. Rubber Co. (No. 3268) 260 Fed. 939, —— C. C. A. ——. All that is there said, and in the opinion of the District Court there adopted, with reference to the validity of the patent, we adopt for this case also. As to the points raised in this case, and not in that, a summarized statement of conclusions must suffice.

1. It is said that the substance of the additional claims secured by reissue was asked for and refused in the original application, and hence that the reissue was invalid. Grand Rapids Co. v. Baker (C. C. A. 6) 216 Fed. 341, 132 C. C. A. 485. We do not so interpret the history of the original application. Tufford's acquiescence was in the rejection of claims calling broadly for the concavo-convex form. They read exactly upon Nerger, so far as this feature is concerned. The reissued claims are limited to the precise distinction from Nerger, viz., to a lift concavo-convex in all cross-sections.

2. The lift indicated by the drawing of the Tufford reissue and that sold by defendant in the Fetzer & Spies Case had its upper edges touching the plane of the superimposed heel at three points—each breast corner and the center of the rear. Between each of these points the upper edge was upon approximately the depending arc of a circle. In the form made by defendant, the edge of the breast

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

has the same shape, but the upper edge of the sides and rear is all in the same horizontal plane as these three points. Hence it is said that the defendant does not infringe, because the language of claim 10 calls expressly for this three-point contact, and each of claims 5 to 9, inclusive, contains the limiting clause "the concave upper face lying entirely below a plane passing through the rear upper edge and the breast corners of the lift," and this limitation is said to be equivalent to the one incorporated in claim 10. Claims 5 and 10 are quoted in the margin.[1]

The words used in claims 5 to 9 do not naturally imply this limitation. The concave upper face, towards its outside, is constantly rising and eventually it meets the more or less vertical outer face. The line where these two faces meet is the edge of each. It is obvious that every part of the concave face of defendant's lift is below the plane in question, excepting this very upper edge, and defendant's contention is substantially to the effect that the very edge itself must be considered a part of the face to which the claim refers (and, hence, that not all of the face is below this plane). This does not impress us as the natural meaning of the words, but, rather, we think it would be natural to observe the distinction between edge and face, and not to intend that one term should include the other. The only question then is whether the patent itself or the file wrapper proceedings compel the inference that when Tufford here said "face" he meant to include edge. The usual rules of claim differentiation strongly tend to support our inference that the edge is not a part of the face. Each of claims 5 to 9, inclusive, describes the concave upper surface as "lying entirely below a plane passing through the rear upper edge and the breast corners of the lift"—in each case in connection with other elements of the invention, and which other elements are so varied that no two of these claims are identical in form. Claim 10, after transposing the order of the words, refers to "the upper side and breast edges of said concave attaching face" lying below the plane in which the rear upper edge and breast corners are disposed. One claim, therefore, is characterized by a stated location of the entire upper face, and the others characterized by the same location of the upper edges. The argument that these two things cannot be considered equal, because that would make the two claims the same, is not conclusive, because one elsewhere calls for "resilient material" and the other for "nonmetallic resilient material"; and though it is not easy to rest patentable distinction upon the presence or absence of metallic reinforcement, upon the whole the compar-

---

[1] Claim 5: "A heel lift of substantially non-metallic resilient material having its body portion of concavo-convex form on every line of cross-section, the concave upper face lying entirely below a plane passing through the rear upper edge and the breast corners of the lift."

Claim 10. "A heel lift of substantially resilient material comprising a body portion, the attaching face of which is concave and the upper tread face convex on every line of cross-section, the rear upper edge and breast corners of the concave attaching face of the lift being disposed in a plane above the upper side and breast edges of said concave attaching face."

ison of the claims confirms what we think the natural impression as to their meaning.

We find nothing in the history of the original application which has any bearing. Neither one of these phrases appears. If the structure intended to be shown by the drawing and referred to in the specification as the preferred form was what we think it probably was—the same as is shown more perfectly in the reissue—either phrase was accurately descriptive. In the reissue application, after rejection and discussions, oral and written, and amendments, claims 5 to 10 were formulated as the result of the examiner's orally expressed ideas as the proper broad statement of the invention. These two phrases then first appeared; one of them is in five claims, and the other in one claim. The applicant embodied them by amendment, in substitution for what he had been trying to get. This, again, confirms the impression above stated. On the other hand, it appears that, when these claims were put in, the applicant inserted in the specification some further description. He describes his construction in the terms of the phrase as found in claim 5, and then, with a connective, "in other words," proceeds to describe it in the terms of the phrase found in claim 10. The presence of this double and declaredly alternative use of the two phrases presents a serious question, and must challenge the rightfulness of the theory that they mean different things when found in the claims; but, in spite of this, we think the theory should be accepted. "In other words" does not necessarily imply exact equality. The words are often used to connect thoughts which are similar, but not identical, and to make them, in this case, a controlling declaration of identity, would be to permit what we think the substance of the invention, the advance which Tufford had made over Nerger, to be appropriated with impunity. We will not unnecessarily give claims a construction leading to that result.

3. Under the construction which we have given to claims 5 to 9, it is apparent that claim 10 is narrower, so far as it pertains to the location of the upper edge. The theory of contributory infringement is relied upon to justify including this claim among those sued upon. It is said that when the lift is attached and expanded laterally, and the edges of it trimmed down, as the manufacturer intends shall be done, it has such a shape that, if relieved from pressure, there would be only the three-point contact of claim 10. We cannot be satisfied that this is true. Of course, if the three points in question were untouched by the trimming knife, and a considerable depth at the sides between them were removed, the result would follow; but this seems an abnormal method of trimming and one which would not usually occur, and the testimony is rather general and vague. It is clear that, if the degree of the curve upon the concave surface is the same as it approaches these three points and as it approaches the intervening edges (and so far as the eye can judge, this seems to be the fact), the trimming of equal depth all around would leave the undistorted shape at the edge just what it was before. We think the present proofs are insufficient to justify including this claim in the order; but, since it is narrower than the others, we cannot now see that its

exclusion will make any substantial difference in the force of the injunction or in the effect of the accounting, and, consequently, the costs in this court will not be affected. The court below, upon final hearing, will consider claim 10 under the record as it then appears, and without prejudice from this action.

4. Infringement is also denied because defendant's device is said to be dominantly scoop-shaped, like Nerger, rather than saucer-shaped, like Tufford. This is thought to be demonstrated by applying a straight edge along the line from the center of the edge of the breast to the central low spot on top of the lift, and observing that it coincides with the face of the rubber, and hence it is said that the latter must have here a straight line, and so is not concave in longitudinal cross-section. We have some doubts about the perfection of this test, because a very slight pressure upon the elastic rubber would close any curve opening between the two. Some of defendant's samples appear to the eye and to the touch to be curved along this line. However, this is not controlling. We said, in the other case, that the true test of whether this was concave was to ascertain whether, when it was disposed in the right relation to the plane of the bottom of the heel, placed horizontally, there was a low spot which, at least theoretically, would retain liquid without running out at the breast. With this definition, it becomes unimportant whether the line which rises from this low spot to the center of the edge of the breast is curved or straight. The application of the suction test to defendant's samples indicates, if it does not demonstrate, that they have this central depression on the longitudinal cross-section, which causes the center of the edge of the breast to tend to hug the heel, and the application of the same test to the Nerger samples, made in the identical molds which he used, discloses an absence of this quality. We must therefore classify defendant's lifts with Tufford, rather than with Nerger.

The order will be affirmed.