## I. T. S. RUBBER CO. v. UNITED LACE & BRAID MFG. CO.

(District Court, D. Rhode Island. June 11, 1920.)

No. 111.

Patents ⬡328—Reissue 14,049, for rubber heel, valid and infringed.

The Tufford reissue patent, No. 14,049, for a resilient heel lift having its body portion of concavo-convex form on every line of cross-section, should be construed with reference to form and function of the structure shown. As so construed, claims 5, 6, and 7 *held* not anticipated, valid, and infringed.

In Equity. Suit by the I. T. S. Rubber Company against the United Lace & Braid Manufacturing Company. Decree for complainant.

Lyman & McDonnell, of Providence, R. I., Charles A. Brown, of Chicago, Ill., and F. O. Richey, of Elyria, Ohio, for plaintiff.

Oliver Mitchell and Joseph T. Brennan, both of Boston, Mass., for defendant.

BROWN, District Judge. The bill charges infringement of reissued letters patent No. 14,049, January 11, 1916, to John G. Tufford, for "resilient heel." Claims 5, 6, and 7 are in issue:.

"5. A heel lift of substantially nonmetallic resilient material having its body portion of concavo-convex form on every line of cross-section, the concave upper face lying entirely below a plane passing through the rear upper edge and the breast corners of the lift.

"6. A heel lift of substantially resilient material having its body portion of concavo-convex form on every line of cross-section, the concave upper face lying entirely below a plane passing through the rear upper edge and the breast corners of the lift; said lift being provided with nail-receiving openings located near the center thereof.

"7. A heel lift of substantially resilient material comprising a body portion, the attaching face of which is concave and the tread face of which is convex on every line of cross-section and normally held in such form by its own inherent resiliency; the concave attaching face lying entirely below a plane passing through the rear upper edge and the breast corners of the lift, whereby to cause the entire margin of said lift to exert a uniform pressure on the heel of a shoe when said lift is positioned on the heel and the convex tread face thereof depressed to flatten said lift."

The defendant's heel is described in letters patent No. 1,266,578, May 21, 1918, to Gambino, assignor to defendant, for "rubber lift for boots and shoes."

The plaintiff states that the defendant's commercial heels are not in exact accordance with the Gambino patent, since the breast edge is arched, though shown straight in the Gambino patent.

The Tufford patent in suit has been sustained by the Circuit Court of Appeals of the Sixth Circuit. Fetzer & Spies Leather Co. v. I. T. S. Rubber Co., 260 Fed. 939; United States Rubber Co. v. I. T. S. Rubber Co., 260 Fed. 947. The first of these decisions approves and adopts, with some reservations, the opinion of Judge Westenhaver in the District Court.

Since the hearing in the present case counsel have presented a further decision of that court, dated March 2, 1920, in the case of

Elyria National Rubber Co. v. I. T. S. Rubber Co., 263 Fed. 979, reversing an order for preliminary injunction, and further considering the Tufford patent in suit.

The defense in the present case is based upon prior art publications, under Rev. Stats. U. S. § 4886 (Comp. St. § 9430).

The principal publications relating to what are termed "concavo-convex" heels are prior patents, Ferguson, 638,228, 1899; Nerger, 661,129, 1900; Wolf, 653,161, 1900; Corman, 745,793, 1903; Hale, 740,124, 1903.

The defendant states that neither the Wolf nor Corman patents were before the court in any previous case, and that, while the Hale patent was set up in the United States Rubber Co. Case, it was not noticed in the opinion. The Ferguson and Nerger patents, however, have received the most careful consideration of the courts of the Sixth Circuit throughout all the litigation. The Hale patent was cited by the examiner in the Patent Office.

The Circuit Court of Appeals for the First Circuit had before it plaintiff's patent for a mold in I. T. S. Rubber Co. v. Panther Rubber Co., 260 Fed. 934, 938, reversing the decree of the District Court, 253 Fed. 63.

There also has been other litigation, but in view of the full discussion in the cases above referred to it seems unnecessary to consider it.

It appears in evidence in the present case, as in former cases, that Tufford conceived the idea of constructing a spherical concavo-convex heel. He nailed a flat sheet of rubber to the top of a round or globular type of wooden newel post, and cut out and fashioned a heel lift, which, when free from the stress which held it to the wood, assumed the shape described in his specification in the words:

"Owing to the curvature of the concave attaching face of the lift, the rear upper edge and breast corners of said concave attaching face are disposed in a plane above the upper side edge and the breast edges of the lift."

The corresponding feature of Tufford's molds is pointed out in the opinion of the Circuit Court of Appeals in I. T. S. Rubber Co. v. Panther Rubber Co., 260 Fed. 934, 939:

"The edges of the opposing surfaces at every point are concavo-convex."

Tufford's adoption of the spherical form for a rubber lift, intended to be flattened and held flat to the heel, shows clearly his conception of utilizing the retractive force of his material to secure a firm attachment to the heel. He chose a form requiring great pressure to expand it to fit a flat surface, in order to utilize a proportionately great retractive force of the flattened arches of resilient material. The effort of the flattened resilient material to regain its normal shape was strongly exerted upon the edges of the heel at all points—at the breast edge as well as at the side edges—thus effectively sealing all the seams.

In defendant's brief it is said:

"The writers and Mr. Livermore entertain the opinion that the advance of Tufford, if any, was in the production of a spherical concavo-convex heel, a

peculiarity of which is that, when shaped to heel form, the sides and breast would be arched and a three-point first contact developed."

The claims in suit, when read as descriptive of such form, are not anticipated by any of the prior art publications upon which defendant relies.

In construing the claims of the patent we should bear in mind that they are not intended to describe merely shape or form, but a structure of resilient material as it appears before application to the performance of its function, and that performance of function is the patentee's main object. We should read the words of the claims primarily as descriptions of a mechanism rather than as descriptive of a peculiarity of shape, irrespective of the functions to be performed. As the specification shows clearly that the form and the resilient quality of the material are to co-operate in the performance of a definite mechanical function, after the described form has been distorted and flattened by nailing the lift to a heel, it is evident that a mere comparison of forms before attachment should not necessarily be conclusive in determining the question of infringement.

The plaintiff's and defendant's structures must be compared in respect to their similarity in mode of operation and performance of their intended functions.

A like comparison should be made of the prior art structures with those of plaintiff and defendant, rather than a mere comparison of form before application.

The words of the claims also should be read primarily as words of description of a mechanism, rather than as words of limitation to any special peculiarity of form, which is nonessential to the performance of the intended function. It would be a narrow construction of the claims to limit them to the feature of a three-point first contact, or strictly to a form which, like Tufford's, was a true section of a hollow sphere.

It cannot be believed that the claims were allowed by the Patent Office, after repeated rejections, merely because of the distinction of a three-point contact before the attachment of the lift. It is manifest that they were allowed because the patentee was able to establish both structural and functional differences between Tufford's lift and the prior art structures cited against him. The file wrapper shows that throughout the application proceedings the patentee insisted upon and emphasized functional differences rather than mere differences of shape.

The principles relating to the interpretation of claims, discussed in the opinion of Judge Putnam in the leading case of Reece Button-Hole Machine Co. v. Globe Button Hole Co., 61 Fed. 958, 10 C. C. A. 194, forbid us from construing these claims merely as descriptive of form. Winans v. Denmead, 56 U. S. (15 How.) 330, 14 L. Ed. 717.

The spherical form, with its three points higher than any others, was distinguishable from the prior art devices, in which all of the edges were in the same plane, as in Ferguson, or in which all edges but the breast edge were in the same plane, as in Nerger, not only by the three-point contact, but principally by the curvature of the face

described in the claims as a "concavo-convex form on every line of cross-section," and described in plaintiff's brief as "arched from the center in all directions towards the edge." When a face of this shape was flattened by a strong pressure, which also flattened the convex back, the retractive effort of the resilient material to regain its shape was exerted upon every part of the edge. The inward pull against all the outer edges was strong, and sufficient to hold the lift in position on the heel until it could be further secured by nailing. It could then be securely and permanently attached to the heel without the use of cement, an important practical advantage. The spherical form, which is perhaps best adapted to perform this function, is capable of considerable modification without destroying or substantially impairing Tufford's mode of operation.

Even if the form should be so modified as to bring all the edges into the same plane, while still retaining enough of the concavo-convex form on every line of cross-section to perform the function of sealing the breast edge as well as the side edges, the substance of the Tufford invention would still be employed. If the changes in the form which the lift assumes before attachment do not substantially effect the mode of operation during and after attachment, they should be regarded as nonessential changes.

The words "concavo-convex form on every line of cross-section" —i. e., longitudinal as well as lateral—relate to features essential to the performance of functions. The three-point first contact is, as defendant states, a peculiarity of the true spherical construction; but the pressure required to flatten the arched edges between these three points is comparatively slight, and the retractive effort of the material in an effort to regain the three-point form, seems of slight practical consequence in comparison with the performance of the function of sealing the edges by flattening the arches which radiate from the center in all directions towards the edges.

Even if the Gambino patent and the defendant's commercial heel dispense with the arches between Tufford's three points of first contact, they do not escape infringement thereby, if they adopt that feature of construction which is the operative mechanical feature which seals the breast edge as well as the side edges.

I do not recall that in the file wrapper proceedings the patentee insisted that the three-point first contact was in itself of functional consequence, or that the pressure required to bring these three points into the same plane, or the retractive effort resulting therefrom, was relied upon to seal the edges. It was said in the Patent Office, as in the specification:

"Owing to the curvature of the concave attaching face of the lift, the rear upper edge and breast corners of said concave attaching face are disposed in a plane above the upper side edges and the breast edges of the lift."

This descriptive statement of three extreme boundary points of the curved face I am unable to regard as a limitation, using that term in the sense that it is ordinarily used in the law of patents. The described concavo-convex form on every line of cross-section may still exist, though these boundary points are cut off. Obviously the inven-

tion is in what lies beneath the plane of these upper boundary points.

In United States Rubber Co. v. I. T. S. Rubber Co. (C. C. A.) 260 Fed. 947, the question of the construction of the claims in suit was regarded as "a serious question," but was decided in favor of the plaintiff's contention that the side edges are not a part of the face.

In considering whether the expression, occurring in the claims in suit, "the concave upper face lying entirely below a plane passing through the rear upper edge and breast corners of the lift," is broader than the expression used in claim 10, "the rear upper edge and breast corners of the concave attaching face of the lift being disposed in a plane above the upper side and breast edges of said concave attaching face," each claim must be read in connection with the specifications and drawings, and we should not lose sight of the fact that in the specification (page 2, col. 2, lines 91–105) both of these expressions are used after the preceding words:

"By references to Figs. 2 and 4 of the drawings it will be seen," etc.

Both are descriptions of what is disclosed in Figs. 2 and 4, which is one thing, and not two different things. This shows, as it seems to me, that as used in the specification they are alternate descriptions of the same, and not of different, breadth.

The argument that through a comparison with claim 10 the claims in suit are to be broadened, and to be so read as to exclude the side edges from the face, seems to me artificial and unsatisfactory, and to require that we should give different meanings to phrases which the specification uses as alternative descriptions of the structure showing the drawings. It does not seem to me essential to make this distinction in order to preserve the substance of the invention which Tufford made.

The question of infringement in this case seems to be not a verbal question, but a substantial question. The main distinction from the prior art stated in the claims is in the words "concavo-convex on every line of cross-section," interpreted by reference to verbal descriptions and drawings of the special spherical form adopted by Tufford, with the addition of a further description of that special form by reference to the location of the face with reference to the plane of three points.

After reading the file wrapper there can be no doubt that Tufford throughout the proceedings insisted upon functions and operative effect rather than upon mere form as the substance of his invention.

I find no reason for holding him estopped from claiming that his patent is infringed by the adoption of his new mode of operation in a form changed only in features nonessential to the performance of function.. With due respect to the opinion in U. S. Rubber Co. v. I. T. S. Rubber Co. (C. C. A.) 260 Fed. 947, 950, it does not seem to me necessary, in order to avoid the appropriation of the substance of Tufford's invention, to make a distinction in claims between the location of the upper face and the location of the upper edges. It seems to be sufficient to say that the claims in suit describe Tufford's embodiment of his invention and are infringed by any lift embodying the sub-

stance of that invention, though in nonessential particulars the form may be changed.

Tufford's structure seems to be distinguishable from the prior art, in that it relies upon the flattening of the longitudinal arch or arches of a spherical concavity, and upon the corresponding retractive action of his resilient material to seal the breast edge of the lift.

Nerger's central location of his nails or screws shows the extent to which he relied upon retractive action of a flattened arch of resilient material to seal the side edges; but he also seems to rely upon this central attachment by nails or screws to hold the breast edge of his lift in contact with the heel.

Hale's patent, No. 740,124, discloses the conception of forming a dish-shaped lift, by inserting in a cavity cut out from a flat piece of rubber, backed by canvas, "to limit the expansion of the rubber plate on the under side," a piece of leather larger than the cavity, in order to exert a side pressure in all directions, and thus to cause the surrounding material to curve or belly outwards. While this might give longitudinal arches, as well as lateral arches, so that, where the whole lift was flattened, the area of contact would be increased at the marginal edges, I find no sufficient disclosure of a conception of using the strong retractive force of flattened arches of resilient material to seal all the edges. His use of leather and canvas in his combination seems to indicate the contrary. The leather is to put pressure upon the rubber, and the canvas is to prevent expansion of the rubber plate on the under side, and the lift will be subjected, not only to these strains, but to the pressure necessary to flatten the lift. Hale's lift seems to be an impractical combination, involving a mode of operation substantially different from that of Tufford's heel, even if it can be described as concavo-convex on every line of cross-section before application to the heel.

In considering claim 7, due weight must be given to the expression "normally held in such form by its own inherent resiliency." Ferguson uses a spring plate to "assist in imparting the desired curvature to the rubber." Wolf's holding plate is an essential and dominant feature of his invention. Nerger uses a spring plate with lateral arms, which performs not merely the function of washers, but serves also as a spring clamp or bearing portion. Tufford's conception avoided the need for such devices, since by adopting the spherical form for a lift intended to be flattened, and to seal the edges through the effort of the resilient material to regain its normal form, he relied upon, and utilized, the retractive quality of his material to the best advantage. This, in my opinion, was a true inventive conception. It not only dispensed with impractical and detrimental features expensive and difficult to manufacture, but made a unitary structure which better utilized the inherent resiliency of the material to perform functions which prior inventors thought made metallic reinforcement desirable, if not necessary. It was a change which was, however, something more than the mere omission of metallic reinforcement. Tufford's change to the spherical form, whereby he increased the grabbing action of the edges all around the lift, must be regarded as an improvement over those

forms of rubber lifts which are merely concavo-convex in lateral cross-section. The use of such earlier forms of lifts, without reinforcing spring plates, but merely with washers of the ordinary type, would not, in my opinion, infringe the Tufford patent, nor embody the substance of Tufford's inventive conception.

In U. S. Rubber Co. v. I. T. S. Rubber Co. (C. C. A.) 260 Fed. 947, 950, the court said of so-called U. S. Co. lifts:

"We must therefore classify defendant's lifts with Tufford, rather than Nerger," finding in the infringing device a "central depression in the longitudinal cross-section, which causes the center of the edge of the breast to tend to hug the heel, and the application of the same test to the Nerger samples, made in the identical molds which he used, discloses an absence of this quality."

A like comparison of the exhibits in the present case leads to the conclusion that in respect to the means for sealing the breast edge the defendant's lifts bear a closer resemblance to Tufford than to Nerger, or other devices of the prior art.

The defendant's showing of the prior art, as represented in the publications, does not, in my opinion, require us to hold the claims in suit void for noninvention, nor fully support its contention that its structure is derived from the prior art without infringement upon Nerger.

Though the structures involved in the case are simple, and their mode of operation not difficult to understand, the case presents questions of infringement by no means free from difficulty. If we treat the claims merely as verbal descriptions of form, and accept the defendant's contention that it "is charged only on shape claims," then there is great force in its argument that the defendant's lift, with edges all in the same plane, or so nearly so that only a very slight pressure, developing no retractive effect is required to flatten the breast edge, and with an attaching face of irregular form, with a central cavity and with flattened surfaces at different angles, is not concave at all. If, however, we read the words of the claims, in connection with the specification and drawings, as descriptive of an operative device designed to utilize the resiliency of flattened arches to exert pressure to seal all the edges, and in the light of the evidence that this was accomplished so effectually as to dispense with the use of cement and to greatly facilitate the attachment and adherence of the lift to the heel, and compare the thing claimed with the defendant's lift in respect to their substantial identity as operative devices, we must, I think, find infringement.

It appears that the defendant, in advertisements to the trade, has called its lift "true concavo-convex," and described its inner surface as "concave," and claimed for it the advantages of ease of attachment without cement, and tight fit of the edges, which are improvements which Tufford brought into the art.

I am of the opinion that claims 5, 6, and 7 of the Tufford patent in suit are valid and infringed, and a draft decree may be presented accordingly.