## I. T. S. RUBBER CO. v. UNITED STATES RUBBER CO.

(District Court, N. D. Illinois, E. D.   February 15, 1922.)

No. 1993.

1. **Patents ⬅288—Jurisdiction in district of infringement does not depend on actual infringement.**

Under Judicial Code, § 48 (Comp. St. § 1030), authorizing suits for infringement of a patent to be brought in any district in which the defendant has committed an act of infringement and has a regular and established place of business, the court will not, on motion to dismiss for want of jurisdiction, determine whether the sales by defendant within the district were infringements, which would be a substantial determination of the merits of the controversy; but if the defendant in fact has a regular place of business within the district and made therein sales of the articles claimed to infringe, and the plaintiff makes a bona fide claim that the article was an infringement, the court of that district has jurisdiction of the controversy.

2. **Patents ⬅288—Suit for second infringement of same patent may be brought in district different from first suit.**

Where plaintiff had prevailed in a suit for infringement of a patent against the same defendant in another district, he is not required by Judicial Code, § 48 (Comp. St. § 1030), to bring a subsequent suit against the same defendant for infringement by a different device in the district in which the former suit was tried, but may bring it in any district where the jurisdictional facts exist.

3. **Patents ⬅327—Suit not dismissed on plea of res judicata which cannot be determined without evidence.**

A suit for infringement of a patent by the sale of the device adopted by defendant after a prior decree against it for infringement had been rendered will not be dismissed on defendant's plea that the prior decree was res judicata as to the subsequent infringement, where that plea cannot be determined without the aid of evidence and a full hearing on the merits.

4. **Patents ⬅327—Decree finding infringement is conclusive in second suit between same parties concerning different device only as to matters actually decided.**

A decree in a former suit finding infringement of plaintiff's patent by defendant is conclusive, in a subsequent suit between the same parties

for infringement of the same patent by a different device adopted by defendant after the former decree was rendered, only as to those matters in issue in the former suit and on the determination of which the decree was rendered, since the second suit is on a different cause of action from the first.

5. **Patents ☞327—Former decree held not conclusive as to maximum scope of plaintiff's patents.**

A former decree in a suit between the same parties for infringement of the same patent is not conclusive between the parties as to the maximum scope to be allowed plaintiff's patent, but only that the scope of the patent was sufficient to include the article there alleged to infringe.

6. **Patents ☞327—Decision in another circuit as to scope of patent not directly involved will be followed, so far as clear convictions permit.**

Though the decree rendered in another circuit is not conclusive as to the scope of plaintiff's patent, except in so far as it was involved in that suit, the decision of the courts in that suit as to the maximum scope of the patent is very persuasive, and will be followed by the court of another circuit in a suit involving the infringement of the same patent by the same defendant, but by the sale of a different device, except so far as the clear convictions of the latter court prevent.

7. **Patents ☞312(3)—Evidence held to show defendant's heel lift performed same functions as plaintiff's.**

In a suit for infringement of a patent for a heel lift, the principal function of which was the creation of suction between the heel and the lift when the latter was flattened by being attached to the heel, evidence *held* to show that defendant's device, though of a shape different from plaintiff's before being flattened, assumed the characteristic shape when partially flattened, so that thereafter it performed the same function as the patented device.

8. **Patents ☞328—Reissue 14,049, claims 5 to 9, for flexible heel lift, held infringed.**

The Tufford reissue patent, No. 14,049, claims 5 to 9, for a flexible heel lift, the upper surface of which was substantially saucer-shaped, *held* infringed by defendant's heel lift, which, in a normal position, was in the shape of a tilted saucer, but assumed the essential saucer shape in being attached.

In Equity. Suit by the I. T. S. Rubber Company against the United States Rubber Company for infringement of a patent. Defendant's motion to dismiss the bill denied, and decree rendered for plaintiff.

Charles A. Brown, of Chicago, Ill., and F. O. Richey, of Elyria, Ohio, for plaintiff.

Charles S. Jones and Livingston Gifford, both of New York City, and George A. Chritton, of Chicago, Ill., for defendant.

LUSE, District Judge. Suit in equity by the I. T. S. Rubber Company against the United States Rubber Company in which the complainant charges the defendant with infringement of the Tufford reissue patent, No. 14,049,, and particularly claims 5 to 9, both inclusive, of said patent. This patent has been so often in litigation that it is not deemed necessary here to enter into a description of the plaintiff's rubber heel lift already adequately described in the opinion of Judge Westenhaver in the District Court for the Eastern Division of the Northern District of Ohio, and reported in Fetzer & Spies Leather Co. v. I. T. S. Rubber Co. 260 Fed. 939, 171 C. C. A. 581. Other cases in which various phases of this patent have been dealt with up to date

are Fetzer & Spies Leather Co. v. I. T. S. Rubber Co., 260 Fed. 939, 171 C. C. A. 581; United States Rubber Co. v. I. T. S. Rubber Co. (the same parties as in the instant case) 260 Fed. 947, 171 C. C. A. 589; Elyria National Rubber Co. v. I. T. S. Rubber Co. (C. C. A.) 263 Fed. 979; I. T. S. Rubber Co. v. United Lace & Braid Co. (D. C.) 266 Fed. 375; Tee Pee Rubber Co. v. I. T. S. Rubber Co. (C. C. A.) 268 Fed. 250; Hill Rubber Co. v. I. T. S. Rubber Co. (C. C. A.) 269 Fed. 270.

As indicated above, the patent in suit here has been in litigation between these parties before. In January, 1919, the I. T. S. Rubber Company filed a bill in the United States District Court for the Northern District of Ohio, Eastern Division, against the United States Rubber Company, which latter company is a New Jersey corporation and maintains no place of business in the Eastern Division of the Northern District of Ohio, but consented for the purpose of that suit to submit itself to the jurisdiction of that court. On February 14, 1919, a preliminary injunction was granted against the defendant in that court, and the defendant appealed to the Circuit Court of Appeals for the Sixth Circuit, resulting in the affirmance by that court of the injunctional order on October 7, 1919, after which its mandate was returned to the District Court, and on November 12, 1919, the parties having adjusted their differences as to damages and profits, a final decree was entered in the District Court of Ohio in favor of the plaintiff and against the defendant.

To describe in a general way, for the purposes of this opinion, the defendant's rubber heel lift involved in the former suit, it is perhaps sufficient to say that its upper side edges were constructed in the same plane as the rear and upper breast corners of the lift, and that its attaching face was concave in the general sense of the term, with its lowest area centrally disposed. The upper attaching surface of the defendant's heel, as then made, from the center thereof to the breast was on an ascending line. In that case the defendant contested the validity of the plaintiff's patent and claimed noninfringement, partially at least upon the grounds that the upper side edges of its heel as then manufactured was in the same plane as the rear edge and the upper breast corners, while the side edges of plaintiff's patented lift were in the form of a depending arc, and that the line rising from the center of the attaching face of its lift toward and to the breast was straight rather than curved as in the plaintiff's lift. Defendant was unsuccessful in both of these contentions. In March, 1920, the defendant placed upon the market a new rubber heel lift (now involved in this suit), which it claims to have devised in good faith, following the interpretation of plaintiff's patent found in the opinion of the Court of Appeals in the action there between the parties here, as supplemented and explained by the opinion of that court in the Tee Pee Case (C. C. A.) 268 Fed. 250, and which may be said to be characterized by the fact that the central longitudinal line along the attaching face of the lift is in the form of an arc of a true circle, the lowest point of which is at the center of the breast edge.

By way of further description of the defendant's heel lift, it being understood, however, that the figures now given have not exact arith-

metical accuracy, it may be stated that the defendant makes heel lifts varying in size, the largest thereof being approximately $3\frac{5}{16}$ inches in length along the attaching face, while the smallest thereof is approximately $1\frac{1}{4}$ inches in length. In the largest of defendant's heels the low spot at the center of the breast is $\frac{17}{64}$ inches lower than the upper rear edge while in the smallest heels there is $\frac{8}{32}$ of an inch difference between those two points; such measurements being taken when the lift is held with the plane of the rear edge, and breast corners in a horizontal position. The breast end of the upper longitudinal center line of the attaching face is approximately $\frac{1}{16}$ of an inch below the center of such line in the largest of defendant's heels and $\frac{1}{64}$ of an inch below the center of such line in the smallest. On the largest of defendant's heels the central longitudinal line of the attaching face is the arc of a curve with a radius of $20\frac{1}{2}$ inches, while on the smallest lift such line is on the arc of a curve having a radius of $8\frac{37}{64}$ inches. It should be said further that, in the defendant's heels, a lateral line drawn between the upper side edges of the lift in such position thereon as to pass directly over the point of junction between the central longitudinal line with the breast, such lateral line will under the evidence, pass over the low point on each and all of the longitudinal lines of the attaching surface. In other words, such parts of the attaching face of the lift as lie forward of such line so drawn are, theoretically at least, higher than at the point where they intersect the lateral line so drawn. By way of comparison it may be stated here with reference to the Tee Pee heel, which must of necessity be referred to later on in this opinion, that in the size corresponding to the largest of the plaintiff's heels the upper central longitudinal line of the attaching surface is on an arc of a circle with a radius approximately $8\frac{1}{4}$ inches which continues to a point $\frac{7}{16}$ inches back of the breast edge, at which point such center line departs from the arc of a circle and extends on a straight line and at a tangent to said arc to the center of the breast, with the result that the difference in height between the low point on the breast edge of the Tee Pee heel and the top of the rear edge is approximately $\frac{15}{32}$ of an inch and the breast end of such longitudinal line is approximately $\frac{1}{8}$ inch lower than the center point thereon.

Plaintiff applied to the District Court of Ohio in contempt proceedings, which application was denied by the judge, who in his memorandum in that regard said in effect that the question of whether the defendant's new lift infringed or not should not be determined in a contempt proceeding but only upon a full hearing, either by filing an original bill in a court of competent jurisdiction or by the filing of an ancillary supplemental bill in the Ohio court. The defendant, it seems, maintains an established place of business in Chicago in this district and marketed the new lift there, and plaintiff has instituted this suit as a new and independent one, seeking to establish that the new lift of the defendant is an infringement and the usual relief by injunction and for an accounting.

Before any evidence was introduced the defendant moved to dismiss this suit for lack of jurisdiction in this court, predicating the motion upon the grounds: (1) Because the Act of March 3, 1897 (29 Stat.

695, c. 395, Comp. Stats. § 1030; Judicial Code, § 48), does not permit two suits to be brought in two districts under the same patent, against the same defendant; (2) because under said act it must be established that the defendant has committed acts of infringement within this district and that upon the pleadings and the exhibits attached to plaintiff's interrogatories it is evident that no acts of infringement within this district are properly charged; (3) because plaintiff obtained defendant's consent to the jurisdiction over it for the purposes of the patent here in suit in the District Court for the Northern District of Ohio, Eastern Division. Defendant also moved to dismiss the bill on the ground that plaintiff is estopped by the res adjudicata effect of the final decree against the defendant in the former suit between these parties, sustaining said patent in the Northern District of Ohio, Eastern Division, from contending that the Nerger form of heel lift infringes, being the form of heel alleged to infringe and attached to plaintiff's interrogatories herein. Ruling upon such motions was reserved, and defendant presses for decision. I do not deem it necessary to consider whether the jurisdictional question attempted to be raised by the defendant is one of a nature which can be, or whether it has been, waived, as upon the state of the record disclosed I am unable to see wherein there is any lack of essentials to jurisdiction in this court.

[1] Under section 48 of the Judicial Code, District Courts are given jurisdiction in suits brought for the infringement of letters patent—

"in the district of which the defendant is an inhabitant, or in any district in which the defendant * * * shall have committed acts of infringement and have a regular and established place of business."

That the defendant has a regular and established place of business in Chicago is admitted; that it marketed the devices which the plaintiff claims infringe its patent in this district is likewise admitted; but defendant insists that such devices do not infringe plaintiff's patent, and hence it committed no acts of infringement within this district, and the court is therefore without jurisdiction. Manifestly, to test the question on defendant's theory would require substantially a determination of the merits of the entire controversy upon the limited record available upon the motion to dismiss for want of jurisdiction, a record equally as barren of proper opportunity for investigation, if not more so, than the record in a contempt proceeding, such as Judge Westenhaver, no doubt properly, thought inadequate for the determination of the issues presented in this controversy. Furthermore, if defendant's contention be correct, then in every suit for infringement of letters patent brought in a District Court other than one in the district wherein the defendant is an inhabitant, after trial upon the merits, should the court conclude that there was no infringement, its judgment would of necessity be dismissal, not upon the merits, but for want of jurisdiction. Such results weigh heavily against the correctness of defendant's contention. True, in cases like this, there must be under the statute certain preliminary inquiries made by the court and determined favorably to jurisdiction, before same may be assumed. Whether or not the defendant maintains a regular established place of business within the district is one question. Whether the acts complained of

·were committed within the district is another. If, in addition to these, the court is satisfied that the plaintiff makes a bona fide claim that the acts so committed within the district constitute an infringement, I am impelled to the conclusion that the court as such has jurisdiction of the controversy.

This was the effect of the decision of the Circuit Court of Appeals ·of the First Circuit in I. T. S. Rubber Co. v. Essex Rubber Co. (decided November 29, 1921) 276 Fed. 478. See, also, Tyler Co. v. Ludlow–Saylor Wire Co., 236 U. S. 723, 35 Sup. Ct. 458, 59 L. Ed. 808. The proposition is not unlike that involved in Barry v. Edmunds, 116 U. S. 550, 6 Sup. Ct. 501, 29 L. Ed. 729, and Wetmore v. Rymer, 169 U. S. 115, 18 Sup. Ct. 293, 42 L. Ed. 682, where it was determined that:

"Suit cannot properly be dismissed by a Circuit Court as not involving a ·controversy of an amount sufficient to come within its jurisdiction, unless the facts, when made to appear on the record, create a legal certainty of that con-·clusion."

The acts of which plaintiff complains in the instant suit, if they infringe, constitute a new and distinct cause of action. Plaintiff's rights, it is true, are based upon the same patent that was involved in the former suit; but the invasion thereof, if any, by the defendant is entirely distinct and separate and occurred subsequent to the entry of the final decree in that suit and after all matters of accounting between the parties had been disposed of by agreement and the entire controversy between them finally determined by such decree. Defendant has no regular and established place of business in the Ohio district, and hence a necessary jurisdictional fact is there absent. The result of the acceptance of defendant's contention here that plaintiff must confine itself to proceedings in the Ohio court would be that plaintiff must proceed by supplemental bill in the former suit. Whether, in view of the fact that the Ohio court's jurisdiction was by consent of defendant and limited to the purposes of that suit, jurisdiction exists to entertain a supplemental bill, based wholly upon occurrences postdating the entry of the final decree, is a question not free from doubt, but which I do not think it essential to determine. The very doubt goes far to negative the claim that plaintiff's procedure in this court constitutes any abuse of its right to proceed in this jurisdiction, nor can plaintiff's right be changed by the fact that defendant again offers to submit to the jurisdiction of the Ohio court.

[2] Nor am I able to accept defendant's contention that section 48 of the Judicial Code in effect prohibits actions being brought by a given plaintiff upon a single patent against one defendant in more than one judicial district. Undoubtedly all matters in controversy between the parties, occurring prior to the commencement of any suit or during its pendency, should be brought to the attention of the court wherein a suit is pending. But clearly, after the final determination of one suit, if the defendant again violates plaintiff's rights, even under the same patent, by way of a device different from that involved in the first suit, then the plaintiff may seek out the defendant in any district where the jurisdictional facts exist and proceed in any proper court therein. While defendant's counsel have cited several cases wherein

the courts have expressed a preference for supplemental bills over proceedings in contempt and also such preference over a new, independent suit to be brought in the same jurisdiction where there was a suit then depending in which the bill might well be filed, no authority has been brought to my attention whereby a patentee is denied a remedy by a new and independent suit under the circumstances existing here. Rather the contrary is indicated. See T. B. Woods Sons Co. v. Valley Iron Works (D. C.) 198 Fed. 869; California Paving Co. v. Molitor, 113 U. S. 609, 618, 5 Sup. Ct. 618, 28 L. Ed. 1106; Chicago Grain Door Co. v. Chicago, B. & Q. Ry. Co. (C. C.) 137 Fed. 101.

[3] The second of defendant's motions to dismiss, based upon the supposed res adjudicata effect of the final decree in the former suit between these parties, assumes the similarity between the Nerger form of heel lift and the lifts of the defendant involved in this suit, and in addition the dissimilarity between the plaintiff's and the defendant's lifts. The determination of these propositions is the subject of the controversy on the merits in this action, neither of which was sufficiently clear to warrant the court in dispensing with the aid of evidence and a full hearing upon the merits. The defendant's motions to dismiss are therefore denied.

[4] Each party invokes the doctrine of res adjudicata, and claims the other is estopped by the final decree in the Ohio case. Plaintiff claims that the effect of such final decree is to estop the defendant from questioning the validity of plaintiff's patent, plaintiff's ownership thereof, and infringement by the device formerly made by the defendant. This is conceded by the defendant, which claims, however, that the plaintiff is estopped by the same decree to claim that a heel lift having the lowest point of its concave attaching surface at the breast is within the scope of its patent; the Circuit Court of Appeals of the Sixth Circuit having held, on the appeal from the preliminary injunction in the case between the parties here, that the true test for determining whether the attaching surface was concave was to ascertain whether, when it was disposed in the right relation to the plane of the bottom of the heel placed horizontally, there was a low spot which at least theoretically would retain liquid without running out at the breast.

Defendant relies largely upon the case of Bradley v. Eagle Co., 57 Fed. 980, 6 C. C. A. 661. In that case, however, if the machines in the second suit between the parties were not the identical machines involved in the first as indicated by the complaint, they were at least exactly similar as alleged in the answer, so that there was no question involved in the second suit which had not been of necessity determined in the first. Hence the case is not applicable. As already indicated, it is my opinion that where a defendant charged to infringe a patent, after final decree in one case, devises a new and different article also claimed to infringe, a second suit commenced to establish the infringement by way of the second device is upon a different cause of action from the first, and the second resolution of the Supreme Court in the case of Cromwell v. Sac, 94 U. S. 353 (24 L. Ed. 195), applies. It was there said:

"But, where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel

only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered."

See, also, Davis v. Brown, 94 U. S. 423, 24 L. Ed. 204; Campbell v. Rankin, 99 U. S. 261, 25 L. Ed. 435; Block v. Commissioners, 99 U. S. 686, 693, 25 L. Ed. 491; Wilson v. Deen, 121 U. S. 525, 532, 7 Sup. Ct. 1004, 30 L. Ed. 980; Bissell v. Spring Valley Township, 124 U. S. 225, 231, 8 Sup. Ct. 495, 31 L. Ed. 411; Steam Gauge & Lantern Co. v. Meyrose (C. C.) 27 Fed. 213; Packet Co. v. Sickles, 72 U. S. (5 Wall.) 580, 18 L. Ed. 550. In the case last cited it was said:

"But even where it appears from the extrinsic evidence that the matter was properly within the issue controverted in the former suit, if it be not shown that the verdict and judgment necessarily involved its consideration and determination, it will not be concluded."

[5] It is quite clear to my mind that in the former suit between these parties there was no issue as to what the maximum scope of the plaintiff's patent might be. The issue was whether the defendant then infringed, which involved a determination of whether or not the scope of plaintiff's patent was sufficiently broad to include the device then made by the defendant. The former suit was in no sense of the term a declaratory action, in which the parties sought the determination of the ultimate limits of the rights of the plaintiff under its patent, but was confined to the issues of the validity of plaintiff's patent, its ownership, and the infringement thereof by the defendant, and those issues were all that was necessary to be determined in that action, in order to support the decree rendered. Obviously any determination of the maximum scope of plaintiff's patent was ouside of such issues, and while the opinion of the court, in so far as it dealt with the maximum scope of plaintiff's patent, is a weighty authority indeed, nevertheless, because in that regard it was outside of the issues, it becomes a part of the law to be considered in the determination of subsequent suits between the parties, but clearly does not cause the decree thereafter entered in that suit to operate as an estoppel as to matters so extrinsic to the issues under the doctrine invoked by the defendant. This view makes it unnecessary to consider the fact that the opinion of the Circuit Court of Appeals in the former case was on appeal from an order granting a preliminary injunction, and the further fact that the final decree was entered partly in response to the mandate of the Court of Appeals and partly by consent of parties.

## Merits.

[6] It should be noted that defendant's lift, involved in the former suit, had its low spot back of the breast edge on its attaching face, and defendant was contending that it escaped infringement because of other distinctions in form, and hence what was said by the court to the effect that plaintiff's patent was confined to a lift having a low spot back of the breast was, strictly speaking, obiter dictum. However, in the Tee Pee Case (C. C. A.) 268 Fed. 250, the question now presented was directly before the Ohio court, and its former dictum followed. Hence, while the reasoning of the Court of Appeals, Sixth Circuit, with reference to the maximum scope of plaintiff's patent does

not operate to estop the plaintiff, the rule of comity requires that it be followed except so far as the clear convictions of this court prevent. Mast v. Stover, 177 U. S. 485, 20 Sup. Ct. 708, 44 L. Ed. 865. The high standing of the courts which have already passed upon the patent here involved, the frequency with which the patent has been before them in various phases, together with the writer's own lack of experience in cases of this character, assure full recognition of the doctrine. In the opinion in the case of Tee Pee Rubber Co. v. I. T. S. Rubber Co., 268 Fed. 250, 255, the Court of Appeals of the Sixth Circuit said:

"We quite agree with Judge Brown in his conclusion (I. T. S. Co. v. United Lace, etc., Co. [Dist. of R. I., June 11, 1920] 266 Fed. 375) that Tufford's meritorious advance was in the effect he secured, and we think this was an effect of which suction is not the operative element, but is rather the symptom. Tufford aimed at a lift of such material, and with a surface so shaped that the flattening of the center would produce an automatic intensive sealing at all the edges, including the breast."

In I. T. S. Rubber Co. v. United Lace & Braid Co. (D. C.) 266 Fed. 375, 377, Judge Brown said:

"In construing the claims of the patent we should bear in mind that they are not intended to describe merely shape or form, but a structure of resilient material as it appears before application to the performance of its function, and that performance of function is the patentee's main object. We should read the words of the claims primarily as descriptions of a mechanism rather than as descriptive of a peculiarity of shape, irrespective of the functions to be performed. As the specification shows clearly that the form and resilient quality of the material are to co-operate in the performance of a definite mechanical function, after the described form has been distorted and flattened by nailing the lift to a heel it is evident that a mere comparison of forms before attachment should not necessarily be conclusive in determining the question of infringement. The plaintiff's and defendant's structures must be compared in respect to their similarity in mode of operation and performance of their intended functions. * * * The words of the claims also should be read primarily as words of description of a mechanism, rather than as words of limitation to any special peculiarity of form, which is nonessential to the performance of the intended function."

With these pronouncements I am in entire accord, and it becomes, therefore, of prime importance to determine whether the defendant's present lift operates in substantially the same manner to obtain substantially the same results as the plaintiff's patented lift. In other words, does the defendant's lift produce an automatic, intensive sealing at the breast edge, and does it have the suction effect symptomatic of plaintiff's product?

[7] This question has not been easy of solution, although the devices in question are comparatively simple. Considering the upper, central longitudinal line of the defendant's lift by itself, theory readily negatives the proposition that pressure at or near the center of such line upon the tread face thereof can cause such intensive sealing at the low point at the breast. However, when one considers the longitudinal arches in connection with the lateral arches, and all of the arches thus formed and radiating in all directions from any given junction of lateral with longitudinal arches, correct theory becomes obscured. It becomes apparent, however, that the normal tendency of the low point at

the breast to be last to come in contact with the heel of the shoe to which the lift is to be applied may be overcome, neutralized, and counteracted. The compound retractive effort in all of the arches when pressure is being exerted to flatten the lift, it seems to me, must necessarily be considered. Given the low spot in the longitudinal line at the center of the breast, it is theoretically possible to construct a lift with such weak retractive effort at the breast and relatively strong retractive tendency back of the breast that force or pressure necessary to flatten the heel at or near the center of the tread surface would be more than sufficient to bring the low point at the breast in firm contact with the heel of the shoe, thus leaving arches running back from the center of the breast towards the center of the lift unflattened and which, when the flattening process was continued, would result in an intensive sealing at the breast edge. In other words, in the process of flattening the lift the arches of the concave attaching face flatten out, and the upper side edges thereof give way, and if that part of the upper side edges close to the breast first expand and give way under such pressure, the low spot on the central longitudinal line of the attaching face may be shifted from the center of the breast edge to a point back thereof in such manner that the continued pressure and flattening of the lift would operate to flatten the longitudinal arches made by the shifting of the low spot, so as to seal the breast edge. That defendant's lift reflects this theory exactly is not meant to be asserted, but it serves to point out the dangers inherent in a theoretical solution of the problem here presented, and to suggest the necessity of relying largely upon experiments and actual tests with the defendant's lifts themselves. The defendant's lifts do not have the degree of intensive sealing at the breast edge found in the plaintiff's lift, but this is not deemed determinative of the problem.

Without discussing the evidence, it is sufficient to say that the plaintiff has offered evidence by way of tests, demonstrations, and expert evidence to the effect that the defendant's heel operates in the same way and obtains the same results as the plaintiff's lift; and experiments made by the court and such unskillful manipulation as the court has been able to apply corroborate the plaintiff's claims. On the other hand, defendant has offered no positive evidence disputing this claim, except to demonstrate that with the defendant's larger sized heels pressure at the exact center thereof will not cause sealing at the breast. This test is deemed too limited. It is when the convex face of the lift is flattened that plaintiff's lift is to exhibit its peculiar advantages. Tufford Reissue patent, p. 3, lines 70, 87, and page 2, lines 87, 99. Pressure at the exact center is, therefore, but a partial test. Without overlooking the fact that the results are not to be determined by the direct action of the nails upon the rubber, nevertheless it must be borne in mind, as heretofore indicated, that the beneficial results of the Tufford patented lift are to be evidenced when the lift is applied to a shoe in the normal and natural manner; that is, by nailing with the nails sufficiently removed from the edges as to leave a large trimming area. Again, defendant's sales manager, in charge of the sales of its rubber lifts, testified in substance that he had or would represent to the trade

that the defendant's present lift performed about as well as its old lift, the one already held to infringe, and which admittedly had the advantages of the Tufford lift now under discussion. On the whole, I am constrained to hold, under the evidence in this case, that the defendant's lift operates in substantially the same manner, to give substantially the same result, as the plaintiff's lift.

[8] Does the fact that the low spot in the defendant's lift is at the center of the breast prevent infringement? Defendant's counsel concede that its present lift is concavo-convex on every line of cross-section in the general sense of the term, but insist that it is not so in the sense in which it is used in plaintiff's patent, and as construed by the Court of Appeals, Sixth Circuit, in order to distinguish plaintiff's patent from the prior art Nerger patent. The latter has been frequently declared to be scoop-shaped, while plaintiff's patented device has been declared saucer-shaped; both terms being used with reference to the lifts when placed with the upper edges horizontal as in contact with the bottom of the permanent heel, to which the lift is to be attached and before any flattening pressure is applied. In Fetzer & Spies Co. v. I. T. S. Co., 260 Fed. 939, 940, 171 C. C. A. 581, 582, the opinion states:

"It is characteristic of the saucer shape that there should be a somewhat centrally disposed low spot, so that, if the upper edges of the lift were put in contact with the horizontal bottom of the heel, as far as may be without using force to distort the normal shape of the lift, any contained liquid would be retained in this lowest spot, because the edge of the lift towards the breast of the heel would be higher. It is characteristic of the scoop shape, under the same conditions, that the line from the low spot to the edge of the lift at the breast would be substantially horizontal, and the liquid would run out. The effect of this distinction is that when the central part of the depression is forced up against the bottom of the heel, there is a distinctly greater tendency with the saucer shape than with the scoop shape for the breast edges of the lift to maintain tight contact with the heel. If the surfaces are smooth enough, this excludes the air, the atmospheric pressure holds the lift, flattened out, against the heel, and we have the result called 'suction.' We do not regard this suction as of decisive importance in itself, because after one or two leather lifts had been removed, the roughness of the leather and the overlapping by the rubber would make it doubtful whether the suction adherence would be of much practical use; but the suction test is of distinct value as determining whether the rubber lift has or has not that quality which distinguished Tufford from Nerger."

In the Tee Pee Case noninfringement of claims 5, 6, and 8 was found because in the Tee Pee lift, though it was concavo-convex on every line of cross-section, the low spot of the attaching surface was at the breast—in other words, the upper central longitudinal line was a downward curve throughout its extent from the rear to the center of the breast edge. It must be borne in mind, however, that there is a substantial difference between the Tee Pee lift and the defendant's, here in controversy. The former was constructed with a sharp curve on its upper longitudinal center line and the downward curve of such line was substantial, so much so that the court held in that suit that there could be no similarity of operation with respect to the breast edge, and on motion for rehearing in effect held that the downward curve of the Tee Pee lift along its longitudinal center line was so great that,

if it could be demonstrated by experiment that the Tee Pee device disclosed the suction element symptomatic of Tufford, to their minds, it would be a demonstration that the supposed difference between plaintiff's lift and the prior art Nerger lift did not exist. The defendant's lift, however, has an attaching face shaped like a shallow saucer, but slightly tipped, sufficiently so that it may be truthfully said that the lowest point upon its upper central longitudinal line is at the center of the breast, when the upper side and rear edges of the lift are held in a horizontal plane. It is equally true that, when the defendant's lift is laid upon its tread surface the concave attaching face becomes, by reason of the shifting of the center of gravity, truly saucer shaped.

Being convinced that, in these lifts, shape, resiliency, and pressure, when being applied to a heel as indicated in the quotation from Judge Brown's opinion above, all combine to perform a given function, I am impelled to conclude that neither the test of laying the defendant's heel on its tread face upon a flat surface, nor holding it with its upper side and rear edges in a horizontal plane, is conclusive, but rather the position of the saucer with reference to the bottom of the heel to which the lift is to be attached, must be followed into the operation of attachment in the normal and natural manner, and if, during such operation, the low spot at the breast becomes located back thereof in such manner as to present longitudinal arches for further flattening which in being flattened cause the automatic intensive sealing at the breast, then it should be said that defendant's heel is concavo-convex in the sense used in the plaintiff's patent, as well as in the ordinary sense of the words. I am persuaded it is in this fashion that the defendant's lift operates, and which secures to it the meritorious advances made by Tufford of automatic intensive sealing at the breast edge and the symptomatic element of suction.

A study of the Tufford and Nerger patents and file wrappers leads me into accord with the Court of Appeals of the Sixth Circuit upon the propositions that the distinguishing feature between Tufford and Nerger is that the latter is "concavo-convex," while the former is "concavo-convex on every line of cross-section," and my mind assents also to the proposition that the phrase "concavo-convex on every line of cross-section" means a form substantially saucer-shaped, of which it is characteristic that there should be a somewhat centrally disposed low spot. I am unable, however, to bring my mind to assent to the proposition that the true test as to whether or not the concave attaching face of defendant's lift is concavo-convex, in the sense used in the patent, is by any arbitrary positioning of the lift before its application to the heel. The lift is designed to be fastened to a shoe heel, and the advantages which the lift possesses manifest themselves in such operation, and a test which excludes from consideration the operation for which the lift is designed is, to my mind, incomplete.

It is true that, to make a proper comparison of various lifts as to shape, they must be brought to a common standard, and for that purpose, positioning the lifts against the bottom of a shoe heel is not only natural, but proper; but to stop there is, it seems to me, to lose sight of the distinction between an operative device, on the one hand, and

a mere design or shape, on the other. If the tilted saucer of the defendant's lift becomes the true saucer of plaintiff's lift, in the course of the flattening both are intended to undergo, with resultant substantial identity of operation and result, the difference between the two is, I think, in a nonessential. Winans v. Denmead, 15 How. 330, 14 L. Ed. 717; Abercrombie Co. v. Baldwin, 245 U. S. 198, 209, 38 Sup. Ct. 104, 62 L. Ed. 240; Reece Button-Hole Co. v. Globe Co., 61 Fed. 958, 10 C. C. A. 194; Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935; Ives v. Hamilton, 92 U. S. 426, 23 L. Ed. 494.

Considerations of deference and comity already alluded to have caused me to hesitate greatly in arriving at such conclusion, but I have been unable to avoid it. The evidence in this case, combined with close observation and inspection of the heel lifts of both of the parties, leads me to the conclusion that the defendant's lifts are concavo-convex on every line of cross-section, in the sense in which that phrase is used in the plaintiff's patent, and particularly in claims numbered 5, 6, and 8, and constitute an infringement thereof.

That defendant's lift responds to the suction test, and when applied to a smooth surface, and sudden pressure exerted upon its tread face, suction is so established as to cause the lift to adhere, is sufficiently established by the evidence. Of this test it has been said correctly:

"The suction test is of distinct value as determining whether the rubber lift has or has not that quality which distinguished Tufford from Nerger." Fetzer Case, 260 Fed. 939, 940, 171 C. C. A. 581, 582.

Claim 9 of plaintiff's patent omits the phrase "concavo-convex on every line of cross-section," and describes the attaching face as concave—

"being unbroken and lying entirely below a plane passing through the rear upper edge and the breast corners of the lift, whereby, when the convex tread face is depressed to flatten said lift, a suction will be created," etc.

The term "concave," when applied to the attaching face, is correctly descriptive of the attaching face of the Nerger lift, and while the claim evidently contemplates the omission of the Nerger metal plate as one distinction between the two lifts, I am of opinion that the term "concave," as applied to the attaching face, calls for such concavity in the attaching face as will create the suction mentioned. The latter element was found to be absent in the Tec Pee heel by the Circuit Court of Appeals of the Sixth Circuit, and hence that heel did not infringe. I find, however, that this element is present in the defendant's heel in this case, and that claim 9 also is infringed.

Claim 7 of plaintiff's patent reads as follows:

"A heel lift of substantially resilient material comprising a body portion, the attaching face of which is concave and the tread face of which is convex on every line of cross-section, and normally held in such form by its own inherent resiliency, the concave attaching face lying entirely below a plane passing through the rear upper edge and the breast corners of the lift, whereby to cause the entire margin of said lift to exert a uniform pressure on the heel of a shoe when said lift is positioned on the heel and the convex tread face thereof depressed to flatten said lift."

If it be held that the phrase in such claim, "the attaching face of which is concave and the tread face of which is convex on every line

of cross-section," means the same as the phrase "concavo-convex on every line of cross-section," as used in claims.5, 6, and 8, what has already been said with reference to the last-mentioned claims is determinative of infringement under claim 7. As I view it, however, the two phrases above quoted are not used in the patent as meaning the same thing. I am led to the conclusion in regard to the difference in meaning between the two phrases by the following considerations:

I find nothing in the context of claim 7 which would require or suggest the use of a modification of the phrase "concavo-convex form on every line of cross-section," used in the two preceding claims, if it was desired that the same idea be expressed, and the fact that the phrase in claim 7 appears in different form than that theretofore used without reason, unless it be to convey a different idea, immediately suggests to the mind that a different idea is contemplated. Grammatically, it seems to me, the modifying phrase "on every line of cross-section" relates only to the word "convex," and it seems quite clear that the term "concave," as used in claim 7, is used in the same sense as it appears in claim 9; that is to say, it contemplates any attaching face which responds to the term "concave," so long as the concavity is of such character as will result in the functional statement which is appended to claim 7, as in claim 9.

Again, the original Tufford reissue claims numbered 5 and 6 were as follows:

"5. A cushion heel lift of a concavo-convex form on every line of cross-section.

"6. A cushion heel lift, the attaching face of which is concave and the tread face of which is convex on every line of cross-section"

—indicating that the patentee used the phrases as having distinctive meanings. Original reissue claim 8 contained the phrase found in original reissue claim 6 above quoted, and was thereafter amended to insert after the word "concave" the phrase "and follows a single arc," and while this amendment was later withdrawn the fact that it was offered quite clearly shows the intent to treat the word "concave" independently of the modifying phrase "every line of cross-section." It is true that, if the later phrase, appearing in final claim 7 calling for "a uniform pressure on the heel," demands equality of pressure at the breast with the pressure at the rear and side edges, that it would necessarily bring the upper breast edge at substantially the same height above the low spot in the concavity as the side and rear edges. This, however, is not true of the Tufford lift, either as manufactured or as illustrated in the patent, and hence it seems to me that the word "uniform" is used in a relative sense, rather than in the sense of exact equality, and that it is given sufficient emphasis, if substantial pressure sufficient to effectively seal the breast edge is deemed a compliance with the requirement of uniformity. At any rate, to my mind, the other evidences that the phrase "convex on every line of cross-section," used in claim 7, is not intended to modify the word "concave," outweigh the inferences to be drawn from the use of the word "uniform," when it is clear upon any consideration that that word is used in a relative sense, and not in the sense of exact equality. In

this view of claim 7 (and passing, but not overlooking, the effect of the phrase found only in that claim reading, "and normally held in such form by its own inherent resiliency"), the term "concave" is deemed to have the same significance given to that term as it appears in claim 9; that is to say, it includes such a concavity as when opposed to a tread face which is convex on every line of cross-section and when such convex tread "is depressed to flatten" the lift, will perform the functional office of causing the entire margin of the lift to exert a uniform pressure on the heel of the shoe. In my opinion the defendant's lift responds to this test, and this claim also is infringed.

A draft decree may be drawn by plaintiff's counsel, and served upon defendant's counsel, who will have 10 days from the date of service upon them to file objections to the form of the decree, if any they have, in which event a time and place for a hearing upon the form of decree will be fixed.